## Fenstermacher Estate

SUR TRUST FOR POOR AND NEEDY
OF POTTSTOWN

TAXIS, P. J., November 28, 1969.—The first
account of Continental Bank and Trust Company
(formerly National Bank of Pottstown), testamentary
trustee, was examined and audited by the court on
October 25, 1969.

The account shows a principal balance for dis-
tribution of $256,898.21, composed of mortgages
set forth on pages 2 and 3 thereof, $59,352.67; bonds
set forth on page 3 thereof, $75,590; common stocks
set forth on pages 3 and 4 thereof, $114,081.75; and
1,015 units Bond Preferred Stock Fund, $8,236.28,

for a total of $257,260.70, from which $362.49 is due accountant. In addition, there is undistributed income in the amount of $2,627.66, in cash.

The transfer inheritance tax has been paid.

The accountant submits to be charged in the amount of $8, being the difference between the amount for which credit was claimed for filing the first account, and the amount actually paid for that purpose.

The trust was created by paragraph 9 of the last will of Martha Fenstermacher, who died June 6, 1953. Insofar as pertinent, this provision left her residuary estate in trust

". . . to pay the income therefrom, from time to time, for the poor and needy of the Borough of Pottstown, with direction to my said Trustee to give preference to the poor and needy of Trinity Reformed Church of Pottstown, Pa., as in the discretion of my said Trustee shall seem best, after obtaining and being guided by the joint advice of the pastor of said Trinity Reformed Church and the officers from year to year of the Pottstown Family Welfare Society in the selection of particular poor and needy persons in disbursing the benefits of this trust fund from time to time."

The petition for adjudication recites that the reason or purpose for filing the account is because of the passage of 14 years from the commencement of the trust, and also because "certain changes of circumstances have made necessary a review of the testatrix's instructions." The changes of circumstances referred to include the merger of the Pottstown Family Welfare Society, which during testatrix' lifetime provided food, clothing, cash and other direct assistance to the poor and needy, into the "Family Service of Montgomery County." This agency now functions primarily as a counselling service throughout

Montgomery County, although specific services are rendered in the Pottstown area by a local office. The agency does not emphasize direct aid, and as a matter of fact utilizes this form of assistance only minimally in its activities. It did utilize some funds from this trust for that purpose, however, up to March 25, 1968, but has not done so since, for reasons which will appear.

For the major portion of the duration of the trust, the trustee has functioned as directed. It has obtained names of beneficiaries from the pastor of Trinity Reformed Church, Rev. John. B. Frantz, and acted similarly through the Family Welfare Society and, later, Family Service. It has also reimbursed Family Service for part of the cost of counselling services performed by it, which are done primarily through the use of paid case workers. These workers, by consultation with the agency's clients, attempt to solve the problems created by financial and personal crisis at their roots. This attempt to cure rather than only soothe the pain is logical and laudable, we believe. However, financing the operation of this sort of social service may have come into conflict with certain directions of testatrix, and, therefore, the trustee has presented certain questions to us for resolution, so that it may administer the trust constructively but at the same time in ways contemplated and authorized by testatrix.

In the petition for adjudication, the trustee acknowledges that beneficiaries may be persons who are "needy" even though not "poor," which comports with testatrix' language. From this, the trustee concludes that, in addition to direct material or financial aid in situations of crisis, trust funds may also be used to (1) supplement income received from a pension, Social Security, public welfare and the like when

these are inadequate for a reasonable standard of living; (2) send poor children to camp to combat juvenile deliquency, malnutrition, etc.; (3) provide funds for a canteen, sports equipment and the like to other organizations working with the poor and needy; (4) contribute to school expenses of students requiring the same to attend school; (5) provide Christmas gifts to children who would otherwise be without them. We assume that these examples more or less typify areas which the trustee regards as perhaps marginal in the use of funds from a trust directed rather pointedly to "poor and needy" persons. Be that as it may, however, trustee has brought the present proceeding primarily to ascertain the limits of its discretion in this area, and to this end has submitted five questions on which it requests a ruling from us.

Before proceeding with these individually, it is necessary to understand more of the facts which have brought the trustee and Family Service to a sharp difference of opinion. Family Service, in concert with other members of its parent organization and in accordance with what are allegedly regarded as proper standards for social work of its type, has refused to supply trustee with the names, addresses and histories of individual applicants for its services. It takes the position, which it supported by expert testimony, that counselling and other sorts of assistance to persons who are poor, or in need, or who are having family or domestic problems, or who otherwise might be entitled to the services of Family Service and to Fenstermacher funds, are too complex, involved and subtle to be dealt with by others than experts in the field. The experts who testified were adamant in their position that publicity surrounding such problems has a harmful effect on their successful solution. It appears that Family Service is willing

to vouch its costs and expenses and account as an organization for services supplied, and, further, accept such reimbursement of this amount as the trustee deems able to give; but it will not supply any identification of individual beneficiaries, nor will it detail the specific need or problem with which the distribution by the trustee is designed to assist. No such problem exists respecting Reverend Frantz, who has always revealed the individual beneficiaries of Fenstermacher distributions, although he too renders some counselling assistance for which reimbursement is paid. The trustee, in short, declines to make any unidentified distributions, and Family Service declines with equal firmness to identify the recipients of any such distributions; accordingly, direct aid through Family Service has ceased. Further, the trustee now also questions whether payments for counselling services are, in fact, within the purview of its authority.

In an answer filed to the petition for adjudication, Family Service contends that the concept of "poor" should be broadened somewhere along the lines of the current Federal concepts of "poverty." It is suggested that it should mean any person who falls short of having comfortable means. As to "needy," Family Service contends that it should describe not only poverty as above, but any person who lacks something which is requisite, desirable or useful in his life. The answer points out that many governmental programs now exist to meet more or less direct needs, that public welfare is much expanded, and that funds subject to more discretionary use should be utilized in "more innovative ways" than would otherwise be possible. It suggests, for example, the establishment of a day care center, to allow parents of young children the freedom required to increase their self-sufficiency. The case has been submitted to the court for determina-

tion on the petition for adjudication and the answer, and has also been argued orally.

As the question has not been raised, we assume that Family Service has standing to participate in the litigation. The Attorney General, although properly notified and clearly the representative of the public interest in this proceeding (see Garrison Estate, 391 Pa. 234), has not aided us. Although denominating itself a "beneficiary" at one point, we think Family Service concedes that its interest in the trust is as an intermediary for the ultimate beneficiaries. We will regard it, therefore, as a proper representative of these beneficiaries.

The five questions submitted by trustee are, in effect, five requests for a determination by the court of the extent of its discretion. In disposing of these, we are mindful that it is not the right or the responsibility of this court to operate the trust; testatrix lodged this task with the trustee. However, since we may at any time determine whether or not there has been an abuse of discretion, and since a trust of this type is in many ways unique, a trustee should at least be entitled to guidelines from which it may determine whether certain actions would constitute such an abuse. See, for example, Trexler Estate, 39 D. & C. 2d 101, 16 Fid. Rep. 119. We, therefore, pass to a consideration of the individual questions, emphasizing that what we say cannot serve as a precedent or analogy if other and different problems arise in the future.

First, trustee seeks approval of its proposal to broaden its base for the receipt of information regarding poor and needy beneficiaries, and enlisting the aid for this purpose of other churches, agencies and individuals who care to supply assistance. Family Service contends that this would be improper because contrary to testatrix' instructions, since she did not

intend the trustee to determine who was poor and needy, but required this to be determined by Family Service and the pastor of Trinity Reformed Church. A studied reading of the testimentary language, however, shows clearly that the ultimate determination of beneficiaries is with the trustee alone, and that the trustee was given a "discretion" to make payments as to it "shall seem best." The function of the pastor of Trinity Reformed Church and Family Service is to advise; it suffices to point out the fallacy of the position of Family Service to observe the effect if neither the pastor of the church nor Family Service cared to give such advice. We will not suppose that testatrix then intended the trust to fail; the discretion conferred upon the trustee is broad enough to allow it to discover and determine legitimate recipients of trust funds from other persons or agencies than those specifically set forth in the will. Testatrix' references to the pastor and the agency were designed to assist, not command, and if the trustee determines that a proper exercise of its discretion requires it to use information from other sources, this per se would be no abuse. There is nothing to indicate that trustee's position in this matter implies any intention not to consider the advice of Family Service, where it can be properly honored, and of Pastor Frantz, and this is all that testatrix has required it to do.

The second question propounded is whether the trustee is entitled to pay for counselling services. We think that if all of the other conditions and criteria under which trustee operates are complied with, the fact that disbursements were for counselling services rather than for food, rent or clothing would not make them improper. Testatrix conferred a broad discretion on her trustee, probably with the foresight to realize that circumstances can change. Because of the

availability of direct assistance elsewhere, perhaps skilled counselling in the use of such resources would be of immeasurably greater benefit in a particular case than simply applying a temporary palliative. Many persons may be much poorer in mind and spirit than in material things, and in such a situation, counselling, not food baskets, should be available. This is not a mandate to pay for counselling services, but we are convinced that where counselling is an appropriate service to one who is poor or in need, there would be no abuse of discretion by trustee in paying for it.

The third issue raised is as follows:

"After being informed of a possible case, and after making such investigation as the Accountant feels is warranted, may the Accountant select the particular poor and needy persons in the Borough of Pottstown and distribute the funds as in its discretion shall seem best?"

Involved here is the double issue of whether the trustee ultimately makes the final decision as to recipients, and, secondly, in making the investigation referred to, may it require the name, address and other information about the beneficiaries before disbursing funds to them? The first issue has already been decided by our holding that it is the trustee and it alone which ultimately must determine who is to receive funds. If, in the exercise of its discretion, the trustee requires knowledge of the name, address and personal situation of the distributees, this would be entirely within a proper performance of its principal function to determine that "poor and needy" persons are, in fact, receiving the funds of this trust. While such a determination may contravene some modern concepts of social service, and we are not completely convinced that this is so out-

side of the regulations of the particular agency involved here, nevertheless this matter is ultimately governed by the precepts of trust law which require us to observe and respect the settlor's intent, in spite of outside opinions as to better ways to use his funds. And it also seems fundamental that the trustee has a right to require and retain sufficient records to enable it to demonstrate, if the question is ever raised, that the funds of the trust have been properly distributed.

The fourth question raised is whether the trustee might engage the services of additional persons, probably on a part-time basis, to make contracts and investigations required in administering the trust according to testatrix' directions. Family Service appears to take the position that such a practice would be unnecessary if its view of the proper way to select beneficiaries were adopted; but we have already ruled that the trustee should not generally accept and pay out upon anonymous case histories. Further, Family Service through its expert witnesses contends that evaluating need, dispensing assistance, analysing family and other problems of the poor and needy, and similar social work are outside trustee's expertise, and that funds should not be paid to unskilled persons while a skilled agency is not being utilized. However, we are not convinced that the determination of need and the granting of assistance are so specialized that, for the most part, they cannot be accomplished by an experienced corporate trustee, properly advised and assisted. In any event, a figure of some $1,000 per year has been suggested to delineate the extent to which the trustee expects to use this sort of assistance, and we must conclude that expenditures of that order in the effectuation of the main purpose of the trust would be well within trustee's discretion.

The final question asked is, "Are recipients of funds from this trust limited to residents of the Borough of Pottstown?" In this connection, Family Service convincingly points out that the borders of a political subdivision are of limited significance today in delineating the true outer limits of a functioning community, because of the vast changes in transportation, housing patterns, increased economic prosperity and other factors. In this connection, it appears that a considerable number of the congregation of Trinity Reformed Church now live outside the limits of the borough. Testatrix did not use the word "resident," or any equally restrictive expression, but referred only to the "poor and needy *of* the Borough of Pottstown;" and it is suggested that one can be "of" a given locality without necessarily being domiciled there, and that the most reasonable meaning of testatrix' words is that they refer to persons with some substantial relation to Pottstown, either by residence, employment or by any sort of close connection to some local agency or instrumentality. But this concept, valid as it may be, might be very difficult for the trustee to apply, and it appears more practical at this time to rule that the "poor and needy" of Pottstown referred to by testatrix include any resident of Pottstown, and also, because of her instruction to prefer them, any member of Trinity Reformed Church regardless of residence. It may well be that testatrix intended a broader scope than this; but until a problem specifically arises, we will limit the geographical operation of the trust as above set forth.

Claims for counsel fees and additional commissions have been presented. The first claim is for a counsel fee of $3,500 to High, Swartz, Roberts and Seidel, Esqs., for services in preparing and filing the account, and in formulating the advice leading up to it.

This is but slightly more than the minimum fee for this interim account, and it is hereby allowed and awarded. In addition, the sum of $1,500 is also claimed for services rendered in the litigation, which involved two trial days, research, consultations, conferences and argument, and this is also allowed and awarded. As to commissions, the account shows that the trustee has taken income commissions at the rate of approximately five percent, but now requests approval to charge seven percent, allocating six percent to income and one percent to principal. We believe that a six percent commission on income is reasonable in light of the unique problems and difficulties involved in the administration of this trust, and the same is allowed and awarded. The additional one percent to be charged against principal cannot be allowed. Interim commissions on principal are not allowed in charitable trusts, and this rule has been relaxed only where the trust instrument directs the allowance of such compensation: Dolfinger Trust, 89 Montg. 392, 45 D. & C. 2d 404. This was not done here, and no commissions can be charged against principal prior to distribution thereof or termination of the trust. The trustee also requests the sum of $2,500 as compensation for its work in the present proceeding, and the same is allowed and awarded from principal, but only as direct compensation for extraordinary and nonrecurring work done.

Subject to distributions heretofore properly made, the net ascertained balance for distribution is awarded back to the accountant for the continuing administration of the trust.

The account is confirmed, and it is hereby ordered and decreed that Continental Bank and Trust Company, trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, November 28, 1969, this adjudication is confirmed nisi.

*Victor J. Roberts,* of *High Swartz, Roberts & Seidel,* for accountant.

*William R. Cooper* and *Paul P. Wisner,* for claimant.

## OPINION AND ORDER SUR EXCEPTIONS TO ADJUDICATION

TAXIS, P. J., May 13, 1970.—Family Service of Montgomery County has filed six exceptions to our adjudication dated November 28, 1969, of the first account of the trustee of this charitable trust. Decedent left her residuary estate in trust for the "poor and needy" of Pottstown, and a number of administrative matters arose and were decided in the adjudication. The positions taken by the trustee regarding the various problems were generally approved, subject to some modification, hence these exceptions.

1. Petitioner objects to the conclusion that the trustee alone has the responsibility and authority to determine who is to receive benefits. Since the applicable provision in the will directs that aid shall be given as ". . . in the discretion of my said Trustee shall seem best," no other conclusion is possible. Other language subjecting this discretion to the guidance and advice of others, one of which is the exceptant, cannot alter the location of the ultimate responsibility.

2. This exception, which contains the nub of the controversy, objects to our conclusion that the trustee has a right to require that the names, addresses and certain other information about the recipients of aid be disclosed to the trustee. Claimant contends that this disclosure is unnecessary, burdensome, and works contrary to the intent of testatrix, and formerly

also urged that this was also contrary to the principles and ethics of exceptant. However, because the duties and responsibilities of the trustee are governed by the will and applicable trust law, we rejected these contentions in the adjudication. Since nothing new has been raised now, further discussion is not needed.

3. Claimant excepts to the allowance of a sum not to exceed $1,000 per year to the trustee, to defer the costs of checking and screening applicants. The reason stated for this is that, "Testatrix placed the function of selecting ultimate needy persons on the pastor and the Welfare Society." If the premise were accurate, the conclusion might be supportable; but since the selection of recipients is the responsibility of the trustee, the exception is without merit.

4. Claimant excepts to the use of bank employes to determine how assistance should be dispensed, contending that these employes are not as competent for this purpose as social agency employes would be. This statement might be true; but the trustee has not refused to accept guidance from exceptant. On the contrary, Family Service refuses to give such guidance without conditions that the trustee cannot justifiably be required to meet.

5. Petitioner excepts to the fact that the court postponed decision of a portion of the issue concerning the geographical area covered by this trust, until a later time. A reading of the adjudication shows that no present issue was deferred until a later time; rather, a specific ruling as to the geographical area to be covered by the trust was made. In so doing, it was recognized that the testamentary language was not precise, and that if a problem should specifically arise later, this issue could be reconsidered. No such problem existed at that time, however, and it

714

is not our function to render advisory opinions absent an existing problem or issue.

6. This exception objects to the confirmation of the account and the authorization of distributions, and is formal only.

All of the exceptions to the adjudication are dismissed.